All right, next case we'll hear today is Travelers Indemnity versus American Alternative Insurance Company, and Mr. Michael, we'll hear from you. Good morning, your honor, and may it please the court. I am Mark Michael, along with my co-counsel, Mr. William Myers. We represent the Travelers Indemnity Company in this insurance coverage dispute against American Alternative Insurance Corporation over the proper allocation between the two carriers of a nine million dollar settlement paid by Travelers to resolve two underlying state court actions. Those state court actions, very briefly, concerned four deaths in an apartment fire which occurred in Dobson in Surry County, North Carolina. During the fire, the four victims were trapped in an apartment on the second floor of the apartment complex, and they called and were in communication with Surry County's 9-11 Operations Center, specifically Robert Cook and Joseph Shores. Without going into great detail, they were given bad advice. Shores and Cook, following a protocol set forth in the 9-11 Operations Manual, which only called with respect to residential fires for inquiries into the caller's name, the caller's where the fire was, and whether anyone else... Counsel, in this case, as I understand it may be incorrectly, that really the issue deals with two particular provisions of the insurance policy. Correct. Right? So, maybe the time would be better spent telling us why the district court was right or wrong and interpreting those provisions. Correct. So, the first issue raised by travelers on the appeal, then, is whether the district court correctly determined or incorrectly ruled that the AAIC excess policy did not provide coverage. The language of the AAIC policy refers to fire, rescue, and incidental operations of Surry County Emergency Services. So, the question is, do incidental operations of Surry County Emergency Services extend to the actions of the 9-11 operators on the night of the fire? Maybe we could change the issue a little bit because nobody seems to be challenging the fact that the underlying policy covered. Correct. So, if the underlying policy covered, why doesn't the excess policy covered, which uses virtually the same language? Well, that's our argument, your honor. I know, but the argument is the distinction is adding the words including, whereas the excess doesn't have the word including, but they both have of Surry County Engineering Services. That's correct, your honor, and the district court made a distinction between the primary and the excess policy based on very slight variations in the of the AAIC endorsement, the named insured limitation endorsement. On the one hand, the primary policy refers to fire, rescue, and operations incidental thereto of Surry County Emergency Services. The excess policy refers to fire, rescue, and incidental operations of SCES, and the district court distinguished between the two of those, held that the primary policy was the excess policy was not. With great respect to Judge Biggs, the error in her reasoning was in failing... What was the distinction? The only word I see distinguishing the two is the underlying policy says including operations incidental there is other emergency services including operations incidental thereto of Surry County Emergency. The other one says emergency rescue incidental operations of Surry County, so the word including just makes clear that it's included, and it seems to me that it's still incidental operations of the county. Underlying is still incidental services of the county. Correct, correct, and that's our argument, right? Our argument is that the phrase of SCES is where the ambiguity arises. AAIC's position is very clear. Well, if there's ambiguity in the lower one, there's ambiguity in the upper one, right? Neither party contended in the district court or here that there is a distinction to be drawn between the primary and excess AAIC policies. Both parties have described the two provisions as being virtually identical and achieving the same effect. The distinction drawn by Judge Biggs was one that was drawn by either party and is not one that either party defends here. We say that the ambiguity is found in the phrase of SCES because the SCE, the AAIC representatives testified unequivocally that what that necessarily means and what it can only mean is incidental operations performed by members of SCES. Short answer is that's not what it says. It says incidental operations of SCES. Well, it uses of and that of could be going both ways. It could be of the department or of somebody else related to the department. Exactly. But the lower one could say that too, right? Correct. The excess, when I say lower, I mean the underlying policy and the excess policy. That's correct, your honor, and that's the basis of our argument that both policies are ambiguous and that coverage was extended. And if you're right on that, then you get a total of four and a half million. Well, actually, it gets me to my next issue. We believe we get six million. The underlying settlement, as I mentioned, was nine million dollars. That was a global settlement paid to resolve the cases. It was not allocated, was it? It was not allocated in the prior action. Well, I don't know how you guys can allocate it. Your argument supposes that we have to allocate it. No, your honor. North Carolina law says that the nine million dollars is allocated three million to each defendant. That's for equitable for each defendant in a settlement? No. The nine million was in settlement of the claims. That's correct, your honor. And it was divided among three parties, right? Well, among four plaintiffs. Four plaintiffs. Right. And one of them was the county. No, no, no. The county was a defendant. That's a defendant. Yes, sir. Right. No, I understand. There was a global settlement demand in the underlying. In this action, North Carolina Contribution Act statute says that the allocation for contribution purposes is three million. It's divided, right? Right. Okay. Based on that, and because the traveler's policy preserved governmental immunity for Surry County, whereas the AAIC policy does not, we maintain that the only policy to respond to that three million dollars allocated to Surry County in this action is that of AAIC. Well, my point is, okay, let me ask you this question about immunity. Are there exceptions to immunity for gross negligence or malice? There are, and there are exceptions. Well, that seems to me, uh, would you be liable for gross negligence, your policy? We, to the extent that Surry County was held liable and was not held to be immune, the traveler's policy would have responded. Well, so you're arguing that somehow you're concluding that immunity would apply. Yet we are. Yet you had the threat to cover it. I mean, there was a real legal threat because the allegation of the complaint talked about gross negligence and malice. Correct. Correct. And then what happens in this action, what we say is crucial to this action is AAIC concedes that the traveler's analysis is correct. They say so in their brief, right? And, and, and when, well, that goes to the volunteer thing, but I'm, I'm talking about the allocation. You're saying you should get a better allocation because your policy excludes liability of the County based on governmental immunity. That's correct. And I'm suggesting to you, it doesn't necessarily exclude it because you just agreed that if liability was based on gross negligence, uh, then you would have to cover. Or if, if immunity were not found at all, we had an obligation to protect in the underlying action. We did not pay as a volunteer in this action. When $3 million is allocated to, to Surry County and traveler says that's not our responsibility. And AAIC agrees that the traveler's analysis is correct. That necessarily means the only policy which responds to the $3 million allocated to the County is that of AAIC. So, so we contend based upon the allocation established by North Carolina law and the concession by AAIC that that allocation is correct. And the traveler's analysis of the, of the immunity argument is correct. AAIC has conceded that there's the only policy which would respond to this $3 million allocation. So coming out of the district court, the district court said, how much do you have to pay? And how much does the other party have to pay? District court required AAIC to pay travelers $1 million. And your client got the other 8 million. Correct. Correct. My client has already paid the entire $9 million. So you, you either want 3.5 more or you want 7, 8 more? I want 3.5 more or 5 more. Yes, that's correct, your honor. Okay. If there are no more questions on that, I'll move on to the argument raised by AAIC in their brief, which has to do with an alleged failure on the part of the district court to consider extrinsic evidence, which supposedly clearly demonstrates that the parties didn't intend for the call center to be, to be insured under the AAIC policy. The, the argument here is fairly simple that it's been waived. Judge Biggs went to great pains in her opinion to say that the reason she didn't consider the argument is because AAIC provided her with- I thought there was an argument that under applicable state law, if there's an ambiguity, you construe the ambiguity against the insurance company. Exactly. But you don't necessarily go and change the insurance policy by extrinsic evidence. That's exactly right. And the cases cited by AAIC in this court, apparently there were none in the district court, in this court have nothing to do with the issue. I mean, AAIC cites this court to cases involving discoverability of insurance reserves and anti nuptial agreement, um, a Maryland case, a lease case, none of them- Maryland case is not so bad. The Maryland case is not a North Carolina case. Um, and, and earlier cases from this decision, from this court, excuse me, in which the court pointed to the, what I would contend is the crucial distinction, which is that extrinsic evidence is not admissible to vary or contradict the terms of an insurance policy. The simple fact of the matter is AAIC chose this language. This is an AAIC form. It's not an ISO form. AAIC could have written it to say, um, incidental operations performed by SCES and they would win. Are both policies, uh, uh, non ISI forms? Both, both endorsements are AAIC endorsements, your honor. Um, they- Anything else? I'm sorry? Anything else that- No, your honor. Um, we, so, so based on, based on all that, we would contend the district court erred in not finding that the excess policy was triggered because of SCES language is common to both policies and ambiguous. Um, that AAIC bears sole responsibility for the $3 million allocated in this action, not in the underlying action, in this action to the county. Once AAIC has conceded that the traveler's analysis is correct and that the failure of the district court to consider extrinsic evidence was entirely proper because AAIC has completely failed to present any case to this court that would allow the consideration of extrinsic evidence in North Carolina to vary or contradict a finding of coverage based on an ambiguous policy provision. All right. If there are no other questions, I'll reserve my remaining time. Thank you. Thank you. Mr. Kozloff. Good morning, your honor. If it may please the court, Louis Kozloff on behalf of American Alternative Insurance Corporation. To first clarify, uh, one of your questions, Judge Niemeyer, uh, AAIC absolutely does challenge that the primary portion of the AAIC policy provides coverage. Our position is that it does not and the district court erred in that respect. Now, in, in most other respects, the district court's decision on the party's cross motion for summary judgment was correct. Court correctly interpreted the named insured limitation endorsement of the AAIC primary, I'm sorry, AAIC policies, excess coverage to say that it unambiguously provides limited coverage, limited coverage to SCS, SCES and emergency services operations and its incidental operations. Only those operations performed by SCES. It doesn't say performed by, it says of. Correct. And the underlying policy uses the same of. Correct. Both policies have nearly identical wording. Both policies state that what the policy covers are injury arising out of specific emergency services that SCES performs. Ambulance, firefighting, there's a fire marshal that's part of SCES and other emergency services. And both of them include incidental operations. Correct. Incidental operations of SCS. Those of SCS. Of is possessive. Right. And the underlying policy is of too. So you're suggesting that, are you suggesting they should be interpreted differently or you're suggesting they both should be interpreted not to include a third party? The latter. Both should be interpreted. Okay. Okay. I understand your argument. Okay. Thank you, Your Honor. So in that respect, the district court . . . You would want to reverse the district court with respect to the underlying policy. The primary part of one . . . I should clarify, it is one policy under one policy number that has two coverage parts, a primary part and an excess part. And that is one of the key reasons why it was improper for the district court to interpret two parts of the same policy differently and to apply a construction to the primary part that's different from the excess. And that's your cross appeal. You were told to pay a million dollars. Correct. That is the cross appeal. And so if the phrase in both the underlying and the excess policy are interpreted the same in your view, then you get a million dollars back. Correct, Your Honor. Both of you seem to agree that the two policies should follow each other. It's just that you disagree on the meaning of the two provisions. I think that's right, Your Honor. Your interpretation, you get a million back. His interpretation, he gets some more subrogation money. Correct, Your Honor. We think that that is the core error in the district court's ruling. And the correct one was the one that Judge Biggs applied to the excess coverage part. And the is possessive, as I said. So both the emergency services that are covered and the incidental operations that are covered are those of possessive SES. It basically would be the same as if it said SES, emergency services and incidental operations. And also the reason why that interpretation is correct. It's a single policy, as I said, should be construed harmoniously and consistently. But the entire purpose of the county's insurance program is that it had a broad policy that it purchased from travelers that covered all of the county's operations, broad operations, anything the county did for its citizens. Whereas the AIC policy is more limited. It's a supplemental policy that covers only the SES. Now they couldn't write that policy with SES as the named insured. That would be an easy way to perhaps solve this conundrum that we're here today for. But just as in the underlying lawsuit by the victims of the fire, SES was not a proper defendant in that case and was ultimately dismissed because it's not a separate legal entity that's capable of being sued. It's just a department within Surrey County. So for the same reason the policy couldn't be issued to Surrey County emergency services. It had to be issued to the county. So how then does the policy demonstrate that the only thing that it covers, the limited coverage that the county purchased in that policy. The linkage between the two is pretty close because the emergency services was dispatched, could only be dispatched, well not could, but it was only dispatched by the 9-11 group. Correct, your honor. And historically those were part of the same operation. They're now separate operations. But it's very closely linked to the services of Surrey County emergency services because that's the way they got there. And so the question even factually you could ask is even if you give your interpretation whether incidental services of Surrey County emergency services includes the dispatching. You're right, your honor. I'll give you three in response to that. First, the underlying claim involved no negligence by the SCES in any way. There's nothing that the first responders from the ambulance corps of SCES did that in any way caused the victim's death. That's acknowledged and admitted in this case. It was the negligence of the 9-11 operators in providing poor advice to the victims that caused their death. And it was also alleged that the county in training the 9-11 operators was negligent. So there's nothing that SCES, the insured entity, did that gave rise to this liability. And then you're right. The 9-11 operators did dispatch a host of personnel, including some from SCES, but that does not make the 9-11 operations incidental to SCES's operations. And the reason is incidental does not mean, and the district court said, what the 9-11 operators did was not just incidental. It was in fact necessary. It was vital. It was instrumental to their work. Well, instrumental, essential, vital, necessary are the opposite. They're antonyms for incidental. Incidental, as it's been interpreted in North Carolina case law, excuse me, I'm battling a cold, is very different from necessary or vital. Incidental means a fortuitous consequence, something that happens by chance, something that's a lesser consequence of the main thing, the main thing being here SCES. So the fact that the court said and travelers in its briefing says that the dispatch was vital or necessary demonstrates that it's not incidental. Therefore, we continue to maintain that the only reasonable interpretation of the name and short limitations endorsements in the policy is the one that limits- The primary policy has another word that we haven't discussed. It said operations incidental thereto. And thereto is referring, I suppose, to firefighting, ambulance rescue, and other emergency services. And then it says incidental operations, operations incidental thereto. That would seem to be broader than just operations performed by SCES. You're right, Your Honor. And I've looked at these provisions extensively, as I'm sure all of you on the bench have. And I believe there's really no fundamental, meaningful, and material difference between- Well, let's not talk about the difference now. Let's just talk about incidental thereto. You were giving us definitions of incidental. And I was saying incidental thereto refers to the identified services of firefighting, ambulance rescue, or other emergency services. Correct. Correct. And then it adds operations incidental thereto. Correct. That more clearly goes beyond incidental operations of Surrey County emergency services. I believe that thereto does not change the meaning. I think that thereto is just a different way of saying the same thing that's said in the excess parts, name, maturity, limitation, endorsement. And both phrases are then followed by the possessive of SCES. Anything else? I will reserve my time. Well, before I do that, sorry, Your Honor, we made an argument about the volunteer doctrine. As we've said in the briefing, the court does not need to address that issue if it concludes that the AAIC policy does not provide coverage. That only applies if there's some recovery to travelers. And we contend that because of the voluntary issue, it cannot recover the $3 million paid on behalf of Surrey County's liability. Because as they've admitted, their policy doesn't cover that. So we would state that if the court gets to that issue, which we believe it shouldn't, it should affirm the district court finding the travelers acted as a volunteer. All right. Now, I think we address cross appeal, Mr. Michael, I guess. Who's up next? Mr. Michael. All right. All right. You got a few minutes if you need them. I'll be very quick, Your Honor, with three points. Excuse me. First point has to do with Mr. Kozloff's statement about there being no direct link between the deaths and the operations of emergency services. That's actually incorrect. The specific protocol that the 9-11 operators were following on the night of the fire, which was inadequate, was developed by the fire marshal, a member of emergency services, and was actually developed by him after 2017 when the two departments were corrected. So there is a direct link between what the 9-11 operators did or failed to do and the provision of emergency services. Mr. Kozloff apparently is now disputing whether the actions of the operators were incidental. The district court certainly found that they were, and there was no serious argument below that the actions were incidental. The argument now seems to be that because the arguments were essential and vital, they weren't somehow incidental. The response is simply that the greater includes the lesser. Finally, I would point out that this case boils down to a fairly simple analysis. The question for the court is whether incidental operations of Surry County Emergency Services and incidental operations performed by members of Surry County Emergency Services are the exact equivalents. If they are not, then the policy is ambiguous and judgment should be entered for travelers on the claims. Thank you very much. Mr. Kozloff, you have a couple minutes. Is that it? Yes. Okay. If you just bear with me one second, I want to find something to address my friend's last point. His point was that the liability of the county in the underlying case was somehow connected to conduct of SCES because of the training that was given to the call center. I don't believe that's in the record. I don't believe that evidence is before. I probably provoked it because I sort of talked about the dispatching being a central part of the emergency services, and of course, the dispatching might be, and his suggestion was, I mean, there were two functions. One was the counseling of the person called, telling him to close the window and stay inside or keep the window closed. And the second was the dispatching, but I'm not sure that's material to our analysis at all. Correct. There was no issue in the manner in which the emergency services personnel was dispatched that caused the unfortunate deaths of the four victims. And it's been admitted in the record that the only liability that the county faced was based on the actions of the SECC call center or the county's training, and none of those were conducted by SCES. And the final point that I'll make, we maintain that the dispatching is not incidental. As the court said, it was essential or necessary, vital. Those are opposites. However, even if the dispatching of SCES personnel by the call center operators is considered incidental, it was not an incidental operation of SCES, possessive, the only insured entity, and therefore not covered under the AIC policy. And therefore, we ask that the court affirm the district court with respect to the excess policy, excess coverage part, and reverse with respect to the primary. Thank you, Your Honors. Thank you. Thank you. We have battling insurance companies. Thank you. You guys should really, from my experience, insurance companies usually work these things out in conference, but it's before us now. All right. We'll ask the court to adjourn, sign, and die, and then we'll come down and greet counsel. This honorable court stands adjourned, sign, and die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker